`William Cafaro, Esq.*
Partner*
ADMITTED IN NY, CA, MD & TX
Email: bcafaro@cafaroesq.com

*Amit Kumar, Esq.*
*Managing Attorney*
ADMITTED IN NY & NJ
Email: akumar@cafaroesq.com

*Andrew S. Buzin, Esq.*
*Of Counsel*
ADMITTED IN NY, FL & DC



108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
*www.cafaroesq.com*

*Louis M. Leon, Esq.*
*Associate*
ADMITTED IN NY
Email: lleon@cafaroesq.com

*Matthew S. Blum, Esq.*
*Of Counsel*
ADMITTED IN NY
Email: mblum@cafaroesq.com

June 14, 2024

**<u>Via Electronic Case Filing</u>**
Hon. Marcia Henry, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:  *Lorenzo v. 12 Chairs BYN LLC*
        Case No.: 1:22-cv-05350 (BMC)

Your Honor:

  We represent Romario Lorenzo ("Plaintiff") in the above-referenced case brought pursuant to, *inter alia*, the Fair Labor Standards Act ("FLSA") and New York Labor Law "NYLL"), against Imperial House LLC (collectively as "Defendant") (Defendant, with Plaintiff, as the "Parties"). We submit this letter, on behalf of all Parties, consistent with *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the Parties' settlement agreement, a copy of which is attached hereto as **Exhibit 1**. As explained further below, the Parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

  **I.**  **Preliminary Statement**

  The Plaintiff filed this action seeking, damages for minimum wage and unpaid overtime wages under the FLSA and NYLL and record keeping violations under the NYLL. Plaintiff claims that Defendant failed to pay him overtime premiums. In particular, he claims that, from in or January 2017 through on or about December 14, 2020, he worked for Defendants as a kitchen helper.

  Plaintiff alleges that from the beginning of his employment through the end of 2019, Plaintiff worked six days per week - 3:00 p.m. through 12:00 p.m. - for a total of at least 54 hours. When the need arose, he worked more than this. From the beginning of 2020 through the end of his employment, he worked five days per week - 6:00 a.m. through 4:00 p.m. three days per week and 3:00 p.m. through 12:00 p.m. – for a total of at least 48 hours. When the need arose, he worked more than this. From the beginning of his employment through the end of 2018, Defendant paid Plaintiff a fixed weekly salary of $450.00, which was only intended to cover the first forty hours that he worked each week. During 2019, Defendant paid Plaintiff a fixed weekly salary of $500.00,

which was only intended to cover the first forty hours that he worked each week. During 2020, Defendant paid Plaintiff a fixed weekly salary of $600.00, which was only intended to cover the first forty hours that he worked each week.

Based on these allegations, Plaintiff's total damages, inclusive of liquidated damages, are approximately $104,480.00, with $52,240 of that being attributable to actual damages and $52,240. Of course, these calculations include liquidated damages, which are never guaranteed in a wage and hour case.

Defendants vehemently deny all of Plaintiff's allegations, and do not admit to any wrongdoing or violation of the law for any period of time. Defendants state that, at all times relevant to this lawsuit, they paid Plaintiff correctly under the law and kept contemporaneous employment records which squarely dispute Plaintiff's recollection of hours worked and payment received. Furthermore, they claim that Plaintiff's alleged work hours are greatly exaggerated, alleging that he worked no more than forty hours. As additional support for their position, Defendants highlight similar actions brought against them, all of which were resolved in accordance with their positions in this case. In a recent case, both partial summary judgment motions filed by Defendants were decided in Defendants' favor, further highlighting the validity of their records and the level of compliance of their pay practices.

## II.   The Settlement Reached Between the Parties

After the filing the case, extensive discovery exchanges, and participating in rigorous negotiations, the parties were able to arrive at a fair settlement of **$35,000.00.** Although there was delay in actually executing the settlement agreement, a fair agreement was ultimately executed. With respect to the release language in the Agreement, Plaintiff has executed a release of claims related to his compensation by Defendant, and the Agreement contains no confidentiality provision. *See, Barbecho v. M.A. Angeliades, Inc.*, 2017 U.S. Dist. LEXIS 48595, at *6 (S.D.N.Y. Mar. 30, 2017) (rejecting FLSA settlement containing a "general release that r[an] only in favor of defendants"); *Thallapaka v. Sheridan Hotel Assocs. LLC*, No. 15cv1321, 2015 U.S. Dist. LEXIS 117179, at *2-3 (S.D.N.Y. Aug. 17, 2015) ("[T]he overwhelming majority of courts reject the proposition that FLSA settlements can be confidential.").

Plaintiff's counsel strongly believes that the **$35,000.00** settlement is an optimal result within the circumstances. Defendants firmly believed they would succeed on the merits of the case using documentary evidence, witnesses, and other relevant evidence. While Plaintiff (and the undersigned) believe Plaintiff would have been able to prevail at a higher figure - after unnecessarily running up a higher lodestar - this would have entailed significant risk and would have been irresponsible, particularly in light of the decisions in similar, prior actions brought against Defendants. As this is our client's case, his desire to settle this action should govern. Plaintiff undoubtedly desired to resolve this matter, as did Defendant. Furthermore, each party is represented by experienced counsel. Our practice focuses on employment law, and we handle a significant volume of FLSA cases. Defendants' counsel, too, is an experienced business litigation law firm, with a long history of representing restaurants in wage and hour actions.

## III.   The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, *supra* at 335.

<u>Plaintiff's Range of Possible Recovery</u>

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). Here, while Plaintiff alleges entitlement to damages, Defendants aver that he was properly paid at all times and therefore is not entitled to any damages.

The settlement represents approximately 33% of Plaintiff's *full* damages in this case, *inclusive of liquidated damages*. In light of the totality of the circumstances, the settlement represents a reasonable compromise of the *bona fide* dispute in this matter. The settlement eliminates risks and ensures the Plaintiff will receive a meaningful amount of wages due even after paying the legal fee.

<u>Whether the Settlement Agreement is the Product of Arm's-Length Bargaining</u>

A "presumption of fairness, adequacy and reasonableness may attach to a settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties engaged in discovery and participated in arm's length settlement discussions in order to arrive at this settlement. Because the settlement involves a clear and *bona fide* wage

dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

*Possibility of Fraud or Collusion*

There is no possibility this settlement was precipitated by reason of "overreaching" by the employer. To the contrary, the settlement was the result of arm's-length negotiations at mediation and after heavily discussing/disputing the merits of the case. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. Moreover, because the Plaintiff left the Defendant's employ prior to the commencement of the action, there has not been, nor could there have been, any undue influence exercised upon Plaintiff in the workplace which could have precipitated this settlement.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel and were at arm's-length. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

## IV. Plaintiff's Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount, Plus Expenses

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering this extremely favorable result. Under the retainer agreement, Plaintiff's counsel would be entitled to a one-third fee on the gross recovery of $35,000.00, which equates to $11,666.67, plus out-of-pocket costs and disbursements, including a filing fee of $402.00, process server charge of $75.00, and mediation fees of $300.00. *See* Retainer Agreement (with a translation certification) attached as **Exhibit 2** and Expense Records attached as **Exhibit 3**. Plaintiff's counsel's total costs are $702.00. Thus, Plaintiff's counsel's total requested fees and costs is **$12,443.67.**

Although the undersigned fully recognizes the Court's prerogative to evaluate the attorneys' fee arrangement in a FLSA matter, not all courts in this circuit have read *Cheeks* to require this assessment. *See Gutierrez v. 352 East 86th St. Rest. Inc.*, 2016 U.S. Dist. LEXIS 23967, *3 -4 n. 1 (S.D.N.Y Feb. 19, 2016) ("I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counselor to alter the freedom of contract between a client and his attorney"). Additionally, to the extent *Cheeks* did mention attorney's fees, it was in the context of an abusive attorney's fee that went as high as 43.6%, in contrast to the standard one third which is requested here. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d at 206. Nonetheless, in support of this fee request, the undersigned submits as follows:

As the Court will see, the undersigned expended at least 40.4 hours. *See* billing records attached as **Exhibit 4**. Given my experience, the Plaintiff is requesting that the Court approve me at a rate of $300.00 per hour for my work on this case. This rate is reasonable based on my experience. *See, Yu Wei Cao v. Miyama, Inc.*, 2020 U.S. Dist. LEXIS 149336, at *3-*8

(E.D.N.Y. Aug. 18, 2020) (awarding $300.00 per hour for a senior associate with 5 years' experience).

I have been employed as an associate with my office since July 2017. I received the degree of Juris Doctor from Maurice A Deane School of Law at Hofstra University in 2014 and am admitted to practice in the state courts of New York as well as the Southern and Eastern Districts of New York. I am fluent in both English and Spanish, which assisted in this matter as my client is a Spanish speaker. Prior to working at the Law Offices of William Cafaro, I was an associate at Frank & Associates, P.C. and later at Borrelli & Associates, P.L.L.C. where I worked almost exclusively on collective and class action wage and hour litigation.

At the requested rates, Plaintiff's counsel's total lodestar is $12,120. Even where the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2015 U.S. Dist. LEXIS 98691 (S.D.N.Y. July 7, 2015). Moreover, a multiplier is used in order to compensate Plaintiffs' counsel for time that is required administering the settlement. *See Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *19 (E.D.N.Y. Feb. 18, 2011). Courts have awarded multipliers up to **eight (8)** times the lodestar and in some cases, they have awarded multipliers that are even higher. *See, Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (collecting cases); *see also*, *Riveras, et al v. Bilboa Rest. Corp., et al.*, E.D.N.Y. Case. No. 17-cv-04430, DE 74 (Memorandum and Order approving a lodestar multiplier of 6.7). Here, Plaintiff's counsel's lodestar (exclusive of expenses) actually exceeds the fees they will recover in this action.

Lastly, the Court should review the public policy considerations concerning the manner in which attorneys' fees are reviewed. Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing would have been to build up attorneys' fees. This would forestall a resolution that could have been achieved earlier. While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is made, other attorneys who do wage-and-hour litigation very well might. Reducing attorney's fees in single plaintiff FLSA cases below one third would disincentivize early resolution of these cases. As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy.

V.  **Conclusion**

For the reasons set forth above the Plaintiff requests that the Court approve the settlement as reflected in the Agreement. Plaintiff's counsel further requests that the Court approve the attorney's fee award and requested costs reflected in the Agreement as fair and reasonable.

Respectfully submitted,

/s/ Louis M. Leon
By Louis M. Leon (LL 2057)
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602

New York, New York 10018
(212) 583-7400
LLeon@CafaroEsq.com